IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHARON MINOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 03-0206-BH-C |
| CITY OF MOBILE WATER AND | ) | |
| SEWER COMMISSION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This action is now before the Court on the remand by the Eleventh Circuit Court of Appeals for the purpose of allowing this Court to set forth it's rationale for concluding that questions of fact exist which precludes summary judgment in defendant's favor based on qualified immunity with respect to plaintiff's § 1983 claim for retaliation for speech protected by the First Amendment. The Eleventh Circuit appears to question whether the protected nature of plaintiff's speech was clearly established and, in addition, asks this Court "to identify which employment action or actions are adverse" and "to discuss each individual defendant's connection to one or more adverse actions." In answer to these questions, this Court proffers the following:

1. To determine the existence of a *prima facie* case of retaliation for First Amendment activities, the Court must determine: (1) whether the speech addresses a matter of public concern, (2) whether the employer can justify the adverse action, (3) whether the employer's interest outweighs the individual's interest in commenting on matters of public concern, and (4) whether the adverse employment action was substantially

motivated by the protected activity. *See e.g.*, *Connick v. Meyers*, 461 U.S. 138, 150-152, 103 S.Ct. 1684, 1692-93, 75 L.Ed.2d 708 (1983). As applied by the Eleventh Circuit, the four step process is set forth as follows:

> First, the court makes the threshold determination of "whether the employee's speech may be 'fairly characterized as constituting speech on a matter of public concern.' " [*Bryson v. City of* Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989)] (quoting *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 2896-97, 97 L.Ed.2d 315 (1987)). Second, if the court determines that the speech addresses a matter of public concern, the court balances the employee's First Amendment interests against " 'the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Id.* (quoting *Pickering v. Board of Educ. of Township High Sch. Dist. 205,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734- 35, 20 L.Ed.2d 811 (1968)). Third, if the court finds that the employee has satisfied the first two requirements, the fact-finder determines whether the employee's protected speech played a substantial part in the adverse employment decision. *Id.* Fourth, if the employee has prevailed on each of the previous three requirements, the state must prove by a preponderance of the evidence that " 'it would have reached the same decision ... even in the absence of the protected conduct.' " *Id.* at 1566 (quoting *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 286, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)).

*Grigley v. City of Atlanta*, 136 F.3d 752, 753-54 (11th Cir. 1998). As applied to the case at bar, the plaintiff has, in this Court's opinion, established a *prima facie* case of retaliation for protected speech.

  2. Plaintiff's speech was of public concern and therefore protected speech.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement as revealed by the whole record." *Connick*, 461 U.S. at 147-48, 103 S.Ct. at 1690. *See also*, *Sims v. Metropolitan Dade*

*County*, 972 F.2d 1230, 1237 (11th Cir. 1992)(same quote). An employee's opposition to discriminatory practices is a recognized protected activity under the First Amendment and is considered a matter of public concern. *See e.g.*, *Tao v. Freeh*, 27 F.3d 635 (D.C. Cir. 1994)("[Plaintiff's] statement is broader than an individual employee personnel grievance. It asserts that discrimination is occurring against all Chinese-Americans in [plaintiff's] unit. . . . While the letter may have been instigated by an individual personnel dispute, its content reaches beyond that dispute to a broader issue – racial discrimination in a public agency."). *See also*, *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 415-16, 99 S.Ct. 693, 696-97, 58 L.Ed.2d 619 (1979). The fact that plaintiff had a personal dispute concerning the promotion at issue in the "town meeting" of employees conducted by James Sneed does not diminish the protected nature of plaintiff's speech inasmuch as she and others were asserting that discrimination was occurring against all African-American employees.[1]

3.    The facts are undisputed that plaintiff voiced her opposition to discriminatory employment practices in a forum and manner that was consistent with policies, procedures, and customs adopted by MAWSS and, therefore, appropriate. *See e.g.*, *Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1324 (11th Cir. 1989). Plaintiff's speech, although blunt, did not disrupt the operation and/or services provided by MAWSS. The

---

[1] Defendants' contention that plaintiff's grievances filed thereafter somehow convert her expressions at the employee meeting protesting discrimination in the workplace into a personal dispute ignores the fact that the grievance procedure is intended to address personal disputes such as the actions taken by the defendants against the plaintiff following the meeting and not the general concerns addressed at the meeting.

Court, therefore, agrees that plaintiff's speech does not lose its protected status when balanced against the interests of the defendants.

      4.      Plaintiff's transfer was indeed an adverse employment action. As the defendants acknowledge, "[t]he threshold level of substantiality requires the employment action to be objectively serious and tangible enough to alter the employee's compensation, terms, conditions, or privileges of employment." Defendants' Reply (Doc. 62) at 4, *citing*, *Stavropoulos v. Firestone*, 361 F.3d 610, 616-17 (11th Cir. 2004). Although plaintiff's classification as a PSW1 did not change, her hours and salary were reduced and she was relieved of skilled assignments and responsibilities. In addition, plaintiff contends that following her transfer she was forced to endure daily harassment and became isolated at work. As noted by the court in *Tart v. Illinois Power Co.*:

> As we have described, the reassignments here did not involve the use of the same skills, and the differences between the jobs could hardly be described as trivial. The reassigned jobs were objectively inferior; they involved far less skill and significantly harsher working conditions than the plaintiffs' prior positions. Few if any workers would choose to leave independent, skilled positions on one-man trucks or in the meter shop to report to winter ditch digging duty under the supervision of employees they had previously trained. Few workers in today's job market would choose to give up access to computers so they could spend the winter on trenchers and with shovels, digging the holes that made way for other workers to complete the skilled part of the labor. This preference is not idiosyncratic; it is universal.

366 F.3d 461, 473-74 (7th Cir. 2004). As applied to the case at bar, plaintiff's transfer resulted in reassigned duties typically classified as custodial work. Plaintiff lost assignments to operate the video truck and/or video equipment and the responsibilities of

supervising and training those assigned to her vehicle, tasks she previously performed without question very well. No one denies that plaintiff was qualified as a video camera operator and that she performed her job well. The loss of these job assignments directly contributed to plaintiff's reduced workload, responsibility, pay, and ultimately her lost wages. *See e.g.*, *Stavropoulos*, *supra*, 361 F.3d at 618 ("A public employer retaliates when he takes an adverse employment action that is likely to chill the exercise of constitutionally protected speech"); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)("[The First Amendment's] protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions"); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077-78 (11th Cir. 1996)(Conduct short of termination is actionable where plaintiff was relieved of supervisory duties and assigned to clean toilets as a janitor.) Plaintiff's transfer clearly affected "important conditions of employment" creating an adverse employment action under the First Amendment.

5.     It is the opinion of this Court that the indifference to First Amendment rights exhibited by Malcolm Steeves, Less Brown and James Steed, defendants herein, played a substantial role in the adverse employment action suffered by the plaintiff. All three failed to address plaintiff's complaints of racial discrimination in the workplace and then initiated action intending to squelch her speech. For example, Sneed was visibly upset by the complaints made by the plaintiff in October, 2001, and immediately began disciplinary action against her with Sharon King and Brown, including required EAP counseling. *See*

*e.g.*, *Syken v. New York*, 91 FEP Cases 1065 (S.D. N.Y. 2003)(requiring an employee to undergo psychiatric evaluation held to be an adverse employment action).  King was advised by Sneed and/or Brown that complaints of discrimination had been made by plaintiff and others.  After plaintiff's pre-disciplinary hearing, Steeves immediately transferred plaintiff to a position that substantially changed the character of work she performed.  All of these actions occurred within ten days of the protected speech.  Steeves admitted that the transfer was related to the "controversy" surrounding plaintiff.  Brown acknowledged that the transfer resolved problems which had not occurred until the October 21, 2001 field house meeting between plaintiff and Sneed.  Consequently, plaintiff has, in the Court opinion, satisfied the third prong of her retaliation claim by demonstrating that defendants' actions were intended to punish plaintiff for her protected speech, and that, therefore, her protected speech played a substantial part in the adverse employment decision at issue.  To the extent, however, that defendants contest the Court's opinion, material issues of fact exist which must be resolved by the jury.  *See*., *Tao*, *supra*, 27 F.3d at 641 ("The two remaining elements of Tao's cause of action--whether Tao's assertion of discrimination was a substantial or motivating factor in appellees' treatment of her, and whether appellees have shown that they would have required new testing materials from Tao even absent the protected speech-- are factual questions ordinarily left to the jury."), *citing*, *Hall v. Ford*, 856 F.2d 255, 258 (D.C. Cir. 1988).

      6.      With respect to the last prong, plaintiff asserts that, but for her protected speech, she would not have been subjected to disciplinary action.  As a result of the

disciplinary action initiated by Sneed and Brown, Steeves was given the opportunity to transfer the plaintiff. No one denies that plaintiff was qualified as a video camera operator and that she performed her job well. Furthermore, neither Sneed nor plaintiff's direct supervisor, Gaylon Bryan, recommended her transfer or stated it was necessary. It is unlikely the decision to transfer the plaintiff would have been initiated absent the protected speech since that was the event that set everything in motion. Steeves indicated that plaintiff's transfer was due to the fact she involved herself in "controversy," but this controversy was the result of complaints of discrimination in the workplace.[2] Steeves also asserts that "the fact that we had to have this hearing" was reason for plaintiff's transfer. The hearing, however, resulted from the conflict with Sneed involving complaints to management about discrimination in the workplace. It is well established that:

> To fulfill this burden, a government employer must show that the legitimate reason would have motivated it to make the same employment decision. See *Holley v. Seminole County Sch. Dist.*, 755 F.2d 1492, 1505 (11th Cir.1985) (stating that the issue under *Mt. Healthy* "is not whether the Board had objective reason not to renew Holley--it apparently did--but, rather, what in fact motivated the Board in light of Holley's political activity."). An employer must show "by a preponderance of the evidence, that, in light of [its] knowledge, perceptions, and policies at the time of the termination, [it] would have terminated [the employment] regardless of [the protected] speech." *Board of County Comm'rs, Wabaunsee Cty., Kansas v. Umbehr*, 518 U.S. 668, 685, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996).

---

[2] Although Steeves also refers to problems plaintiff had previously had with two other employees which resulted in a transfer, such had occurred two years previously and such remoteness makes it highly unlikely that such problems precipitated the transfer in question.

7

*Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1293 (11th Cir. 2000). The plaintiff has never been considered for a transfer in two years until her protected speech in October, 2001. The temporal proximity between the "town meeting," disciplinary action, transfer and the protected speech, and the fact that operational need was contraindicated, support a finding that the transfer was an adverse action motivated by plaintiff's protected speech. There is no evidence that plaintiff's transfer was ever contemplated before her disciplinary hearing which leads to the logical conclusion that plaintiff would have remained in her position but for her speech. As was true with respect to the third prong, however, any dispute defendants have with the Court's opinion on this point constitutes a material issue of fact which must be resolved by the jury. *See*, *Tao*, *supra*, 27 F.3d at 641.

7. The principles set forth above are and were clearly established at the time defendants retaliated against the plaintiff in violation of her free speech rights. The doctrine of qualified immunity does not, therefore, protect the defendants against such a claim.

For the reasons set forth above, it is again **ORDERED** that defendants' motion for summary judgment (Doc. 29) on plaintiff's retaliation claim be and is hereby **DENIED**.

**DONE** this 25th day of May, 2005.

s/ W. B. Hand<br>
SENIOR DISTRICT JUDGE